## J. ROSENBAUM GRAIN CO. v. CHICAGO, R. I. & T. RY. CO. et al.

### (Circuit Court, N. D. Texas. June 23, 1903.)

### No. 131.

1. INTERSTATE COMMERCE—ATTEMPTED REGULATION BY STATE COMMISSION.

A state railroad commission is without power to require a railroad company to cancel and abolish "proportional tariffs" which apply only to interstate or foreign shipments, and which were adopted with the approval of the Interstate Commerce Commission, to prohibit the company from permitting export shipments of grain to be stopped in transit within the state for cleaning, grading, etc., or by similar orders to attempt to regulate interstate or foreign commerce.

2. SAME—INVALID ORDERS—INJUNCTION.

Complainant owned a large grain elevator at Ft. Worth, Tex., and was engaged largely in buying grain in other states for shipment and export, shipping the same over the defendant railroad company's lines to Ft. Worth, which was its southern terminus, transferring it there to its elevator for cleaning and grading, and then reshipping, availing itself of the proportional tariff on through shipments put in force by the defendant and other connecting companies. The Texas Railroad Commission, also made defendants, without notice to either complainant or the railroad company entered orders requiring the company to cancel its proportional tariffs, prohibiting it from permitting grain shipped on export billing to be transferred into complainant's elevator, and requiring it to cancel any contracts it might have with complainant whereby it had undertaken to pay any sum of money for any purpose whatever. It was further required to file a notice of compliance with such orders by a given time, under penalty of the institution of "such proceedings as may be found proper and adequate to enforce compliance" therewith. Complainant alleged in its bill that defendant railroad company had given notice of its intention to obey such orders, being moved thereto, as alleged, by the fact that it had other interests pending before the commission of great importance to itself. Held, such facts not being controverted, that complainant was entitled to a preliminary injunction restraining the commission from enforcing its orders until the final hearing, as operating to cause complainant irreparable injury in its business.

In Equity. On motion for preliminary injunction.

Capps & Cantey, for complainant.
C. K. Bell, for respondents.

MEEK, District Judge.   I shall be brief in ruling upon the complainant's application for a temporary injunction.   In response to the order to show cause why a temporary injunction should not issue, the defendants, the Railroad Commission of Texas and E. R. McLean, have filed an answer which in its nature is a demurrer to the bill.   In view of this answer, it is proper on this hearing to take the allegations of complainant's bill to be confessed as true.

I will not quote from the allegations of the bill, nor set forth its substance at length.   In my opinion, it exhibits a state of facts that appeals strongly to a court of chancery.   I will pass directly to a consideration of the order promulgated by the Railroad Commission of Texas on the 28th day of May, 1903, and the effect of its enforcement upon the complainant, as these constitute the grounds of complaint in this action. The order directed against the railroad company includes five different commands, and begins as follows:

"After careful consideration of the facts developed in this case, it is hereby ordered by the Railroad Commission of Texas:

"(1) That the Chicago, Rock Island & Texas Railroad Company shall forthwith cancel out all so-called proportional tariffs on grain products from and to points reached by its railway, whether local or in connection with any other lines of railroad."

It will be most convenient to discuss the provisions of the order by paragraphs.

The so-called "proportional tariffs" on grain products, which the railroad company is required to cancel, are defined by the bill of complaint to be a collection of freight rates which apply upon interstate shipments from certain given points to certain other given points, when the commodities shipped originate beyond the place of shipping, or their ultimate destination is beyond the point to which the proportional rates apply.   The "proportional tariffs" in effect with the Chicago, Rock Island & Texas Railroad Company are effective with all other roads doing business in the state of Texas for like service.   So far as this action is concerned, they are shown to be tariffs applying wholly to interstate business, and only to affect commerce between the states.   They are subject to regulation by the Interstate Commerce Commission, and have been published and scheduled in accordance with the interstate commerce act, and approved of and acquiesced in by the Interstate Commerce Commission and all of the different roads on which they are effective.   The complainant, the J. Rosenbaum Grain Company, a corporation organized under the laws of Illinois, and a citizen and resident of that state, has invested a large sum of money in a grain elevator at Ft. Worth, the southern terminus of the Chicago, Rock Island & Texas Railroad.   It is largely engaged in the business of buying and selling grain for domestic uses and purposes and for export to foreign countries.   It purchases grain in that region of the country north of Texas and yet tributary to the Gulf of Mexico.   Having erected an elevator at the southern terminus of what is known as the "Rock Island System," it makes large purchases of grain in the country served by that system, and consigns it for shipment through Ft. Worth when it is meant for export by way of the Gulf of Mexico.   The right of stoppage in transitu is exercised at Ft. Worth, and the grain is put through the elevator for

the purposes of cleaning, clipping, grading, assorting, sacking, and otherwise preparing it for continued transportation. On shipments of grain, where the complainant can take advantage of the "proportional tariffs," this is done. Complainant has large contracts on hand for the purchase and shipment of export grain. Owning the grain elevator at Ft. Worth, it has made its arrangements to do business along the line of the Chicago, Rock Island & Texas Railroad and its northern connection, the Chicago, Rock Island & Pacific Railroad. With the "proportional tariffs" canceled as required by the order, the complainant would not be able to comply with its contracts for the purchase and shipment of grain, by reason of the lower and "proportional tariffs" being in effect on other railroads in favor of its competitors. The usefulness of its grain elevator at Ft. Worth for some of the most important purposes for which it was erected would be entirely destroyed. In passing this order, the Railroad Commission of Texas lays its hand upon interstate commerce, and seeks to control and regulate the same, notwithstanding the Interstate Commerce Commission is given and has exercised authority over these matters in accordance with the provisions of the interstate commerce act. Section 8 of article 1 of the Constitution of the United States provides, among other things, that the Congress shall have power to regulate commerce with foreign nations and among the several states. Ever since the decision of Chief Justice Marshall in the case of Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23, it has been the settled law that the power of Congress to legislate regarding and to regulate interstate commerce and commerce with foreign nations is exclusive, and all state legislation regulating such commerce is unconstitutional. Unquestionably this paragraph of the order of the Railroad Commission is illegal and void.

The second provision of the order complained of is as follows:

"(2) That said Chicago, Rock Island & Texas Railroad Company shall forthwith stop the practice of allowing or permitting export grain to be unloaded in the elevator of the J. Rosenbaum Grain Company at Fort Worth for any purpose, but all grain moved over the rails of said railroad company on export billing and at export rates shall be delivered by said railroad company to its connections in the same cars in which it moves over the rails of said railroad company and with seals unbroken, or, if transfer is made, that the same be done by said railway company."

This order, as well as the first, under the allegations of the bill and by its own terms, relates to and affects interstate or foreign shipments of grain. It deprives the complainant of the right, recognized by the Interstate Commerce Commission and by the orders and rules of the Railroad Commission of Texas, to stop export grain in transit for the purpose of cleaning, grading, etc. It in effect directs that grain purchased by the J. Rosenbaum Grain Company shall move through Ft. Worth under seal in the cars in which it reaches this point, or shall be transferred by the railroad company to connecting carrier without being stopped or treated at the elevator of complainant. This provision renders it impracticable for the complainant to use its elevator at Ft. Worth for one of the purposes for which it was constructed, and impossible to fulfill its contracts for the exportation of grain under the method it has arranged. It also materially affects and in part destroys the value of complainant's property at Ft. Worth. This portion of the

order, in my opinion, is also illegal and void, for the reason that by its terms it seeks to regulate and control interstate shipments, and the Railroad Commission of Texas in passing it acts upon a subject beyond its jurisdiction and control.

The next provision of the order is as follows:

"(3) That said Chicago, Rock Island & Texas Railroad Company be, and the same is hereby, instructed and required to cancel any contract or contracts it may have with the said J. Rosenbaum Grain Company whereby said railroad company has undertaken to pay to said grain company any sum of money for any purpose whatsoever."

This sweeping command, according to the allegations of complainant's bill, relates to and affects a long-term contract which exists between the complainant and the Chicago, Rock Island & Texas Railroad Company for the transfer of grain through complainant's elevator from the cars of the railroad company to the cars of connecting carriers at a given rate per car for such service. It appears from the bill that this contract is fair and legitimate, and one which is usual and customary under conditions similar to those that exist at Ft. Worth. The bill charges that the transfers of grain made under the provisions of this contract have been only such shipments as originated without the state of Texas, and therefore constituted commerce between the states. Here again the Railroad Commission of Texas lays its hand upon interstate commerce, and seeks to regulate and control a minor detail of interstate shipments of grain. It also seeks to wipe out of existence a contract between citizens which, under the allegations of complainant's bill, is a fair and legitimate one. In this respect the order is not only illegal and void by reason of its attempted control of the details of interstate commerce, but it is also void because it destroys the contract of a private citizen, and deprives it of its right to perform a stipulated service and to collect therefor the charges agreed upon. It destroys another of the uses for which complainant's elevator was constructed, and in effect deprives the complainant of its property without due process of law, and is therefore repugnant not only to the Constitution of the United States, but to the Constitution of the state of Texas as well.

The fourth provision of the order will not receive my consideration.

The next and last provision is as follows:

"(5) That said Chicago, Rock Island & Texas Railroad Company is hereby directed and required to file notice in writing with the Railroad Commission of Texas of a full compliance with all the requirements on or before June 10th, 1903, and, upon failure to do so, this commission will cause to be instituted such proceedings as may be found proper and adequate to enforce compliance with the orders hereinbefore made."

This provision, according to the answer of the Railroad Commission, fixes the character of the instrument. It avers that:

"It does not appear from complainant's bill, or from the order entered by the Railroad Commission, * * * that the Railroad Commission has done anything or threatened to do anything of which complainant can lawfully complain; the defendant Railroad Commission * * * has merely notified the Rock Island Railroad of their intention to resort to the courts of the country for the purpose of asserting such rights as the state of Texas may be able to maintain. The commission could have asserted these rights without giving the Rock Island Railroad Company notice of its intention to do so. The notice is merely a courtesy extended to the road."

The language of the order is strictly mandatory in all of its parts. It is true the only penalty provided or suggested for a noncompliance on the part of the railroad company is that the commission will cause to be instituted such proceedings as may be found proper and adequate to enforce compliance with such orders. In this respect the document is, as urged by the Attorney General in his argument, simply a notice of a resort to the courts of the country on the part of the commission in event its commands are ignored. Whether this is a notice to the railroad company that the commission will resort to the courts and prosecute the railroad company for its failure or refusal to comply with the order of the commission (which the Railroad Commission and the Attorney General assert it is not), or whether it is a notice that actions will be instituted by the commission, in event of a refusal or failure to obey the order, for the purpose of accomplishing through the courts the same results as are sought to be accomplished by the order, is immaterial. In the consideration of the matters before me I must look to the effect of the enforcement of this order as is provided by its terms upon the J. Rosenbaum Grain Company. The complainant charges that it had been notified by the defendant the Chicago, Rock Island & Texas Railroad Company that this company intends to carry out and observe the order, and that it has threatened to obey same, and that the complainant believes and fears the railroad company will carry out and perform its behests, unless enjoined and restrained from so doing. It is also charged that the railroad company has many and divers subjects of legislation pending in the state of Texas, and many and divers subjects of importance to itself pending before the Railroad Commission of Texas, and now on the point of adjudication and determination by the said commission, and the complainant believes, and therefore avers and charges, that the defendant railroad company is terrorized and intimidated by reason thereof, and will observe the void and illegal order because of its fear of incurring the displeasure and opposition of said commission. These allegations stand unchallenged by any of the defendants, and for the purposes of this hearing must be taken as true. Therefore, on account of the threatening attitude and impending action of the railroad company, induced by the order of the Texas Railroad Commission now under consideration, the complainant is about to suffer a great and irreparable injury, which it seeks to avoid through this action. The Attorney General, in his argument before me, insisted that this action contemplated the enjoining of the Railroad Commission of Texas from bringing actions in the proper courts against the defendant railroad company for possible violations of the law that would render it amenable and subject to the consequences which are sought to be brought about by the terms of the order entered by the Railroad Commission. I do not so consider the purposes or prayer of the bill. The record before me is absolutely silent as to any infractions of law, either state or national, by the complainant or the defendant railroad company. If, in the putting into effect of the "proportional rates," or in the application thereof to particular shipments, the railroad company has violated the law, it is not my intention by any order entered in this cause to relieve it from merited prosecution. As stated in the beginning, the bill of complainant, in my opinion, sets forth equities which should

appeal to a court of chancery. An answer on the facts should at least be exacted from the body which promulgated the order, the enforcement of which would result in the destruction of complainant's alleged valuable and inalienable rights. The order entered, notwithstanding its character and drastic nature, and notwithstanding the vital effect of its enforcement on the J. Rosenbaum Grain Company, was entered without notice either to the railroad company or to the complainant, and without any hearing whatever.

It was suggested by the Attorney General, in his argument, that under the arrangement existing between the railroad company and the complainant, and by reason of there being in effect the "proportional tariffs" on grain, it was possible for the complainant to secure an unjust and unfair advantage over other dealers and shippers of grain. As to whether or not the complainant has received unfair and unjust advantages over competitors, and as to whether or not the railroad company has discriminated in its favor, the record before me is silent. In event the arrangements between the railroad company and the complainant, and the existence and effectiveness of the "proportional tariffs" on grain, have resulted in discrimination in favor of the complainant, and consequent violations of the law, this could be shown, and it would then have such bearing upon the complainant's application for redress as might be deemed proper.

It is asserted that the order of the commission was made under the provisions of subdivision 3 of article 4571 of the Revised Statutes of the State of Texas of 1895, which is as follows:

"(3) The said commission shall have power and it is hereby made its duty, to investigate all through freight rates on railroads in Texas; and when the same are, in the opinion of the commission, excessive or levied or laid in violation of the interstate commerce law, or the rules and regulations of the Interstate Commerce Commission, the officials of the railroads are to be notified of the facts and requested to reduce them or make the proper corrections, as the case may be. When the rates are not changed or the proper corrections are not made according to the request of the commission the latter is instructed to notify the Interstate Commerce Commission and to apply to it for relief."

The procedure adopted by the commission in this instance is quite different from that provided by the law. The railroad company was not notified that its "proportional tariffs" were excessive, or were levied or laid in violation of the interstate commerce law, or the rules and regulations of the Interstate Commerce Commission; nor was any request made to the officials of the railroad to reduce its rates or to make proper corrections therein. Without being advised of any facts whatever, the railroad company was ordered to "cancel out" certain of its "proportional tariffs," while such "proportional tariffs" were left in effect on all other roads doing business in the same territory and performing similar service.

The order entered also goes far beyond any authority conferred by this provision of the law. The law relates solely to rates and their correction. The order of the commission not only directs the cancellation of "provisional tariffs," but also commands the cancellation of all contracts existing between the railroad company and the J. Rosenbaum Grain Company. Nor is the penalty for failure or refusal to obey this

order notice to the Interstate Commerce Commission of the infractions and application to it for relief. The order issued, both in form and in substance, is so at variance with the method of procedure and authority conferred by the act quoted that it is difficult to recognize it as being promulgated thereunder.

Upon deliberation, I have determined that the temporary injunction prayed for against the Chicago, Rock Island & Texas Railroad Company should not be granted. It should not be enjoined from altering or canceling the "proportional tariffs" in effect on its line, nor should it be enjoined from breaching its contract with the complainant, as for such breach it is presumably fully able to respond in damages. The railroad company, being relieved from the necessity of obedience to the commands of the commission, will presumably fulfill its contract. If it is violating the law and discriminating in favor of the complainant, the J. Rosenbaum Grain Company, either through the means of its "proportional tariffs" or its contract with complainant, it should not be permitted to take refuge behind an injunction of this court in event it is prosecuted for such violation.

A decree temporarily enjoining the Railroad Commission of Texas, its individual members, and E. R. McLean, its secretary, will be prepared by the solicitors for the complainant, in conformity with the views I have expressed.